UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARIA ARANDA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 17 C 5449 ) |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | ) Magistrate Judge Cole ) ) |
| Defendant. | ) ) |

**DEFENDANT'S STATEMENT IN COMPLIANCE
WITH THIS COURT'S ORDER OF OCTOBER 24, 2017**

**Background**

On October 24, 2017, this court issued an order ("*Triplett* Order") requiring the Commissioner to review this case in light of the procedural history of *Triplett v. Colvin*, No. 12 C 4382 (N.D. Ill.).

In the three years since *Triplett*, the Commissioner has not sought to voluntarily remand a case appealed to the Seventh Circuit after a decision by this court in favor of the Commissioner. Nonetheless, this court continues to issue *Triplett* Orders, and recently, has issued more expansive *Triplett* Orders than in the past. Below, the Commissioner provides the statement required by the court's order. It is unclear, however, why this court is imposing even greater burdens on the Commissioner when the *Triplett* scenario has never recurred before it. And no *Triplett* Order, no matter how much precedent it requires the Commissioner to analyze, can insulate against the possibility that a future Seventh Circuit decision, or some other factor, will be the catalyst for a reevaluation of a case after the matter is appealed. In short, no procedure can guarantee that the

*Triplett* scenario will never recur, although the Commissioner has worked diligently to avoid such recurrences.[1]

In light of the absence of any *Triplett*-like scenarios before this court since 2014, and the significant costs the *Triplett* Orders impose, the Commissioner urges this court to reconsider its practice of issuing such orders.

## Argument

I. **The Nature of the Instant Matter, as Compared to *Triplett v. Colvin***

    A.     *Triplett v. Colvin*, No. 12C 4382

The ALJ concluded in *Triplett* that plaintiff, who had schizophrenia, bipolar disorder, and was obese, could perform work at all exertional levels but was unable to understand, remember, and carry out detailed and complex job instructions; was not suited for work that required intense focus and concentration for extended periods; could interact only occasionally with the general public and have superficial or casual contact with co-workers; and could be off-task for five percent of an eight-hour workday. Tr. 30.

Among the issues involved in *Triplett* were: a) the ALJ's evaluation of treatment notes indicating that Triplett was stable with treatment and was looking for work; b) the ALJ's consideration of the opinions of Triplett's mental functionality; and c) the impact of Triplett's obesity on her ability to perform work at all exertional levels.

---

[1] The fact that the Commissioner has not sought to remand an appeal of one of this court's decisions since *Triplett* should not be interpreted as validation of the *Triplett* Orders. In fiscal year 2017, the Commissioner sought remand in just two cases where plaintiffs appealed NDIL decisions to the Seventh Circuit.

**B.     The Instant Matter**

The ALJ determined that plaintiff experienced the severe physical impairments of bilateral carpal tunnel syndrome, and osteoarthritis; and obesity. Tr. 19. The ALJ further determined that plaintiff's migraines and knee problems were not severe. Tr. 20. After appropriately concluding that plaintiff's condition neither met nor equaled any listed impairment, Tr. 20-21, the ALJ determined that plaintiff had the residual functional capacity to perform a range of sedentary work, and could occasionally lift 10 pounds, frequently lift less than 10 pounds; stand/walk for six hours; sit for six hours; occasionally push or pull with the upper extremities; occasionally climb ramps and stairs, but never climb ladders, ropes or scaffolds; frequently balance, stoop, kneel, crouch, and crawl; occasionally handle, finger, and feel bilaterally; and have occasional exposure to moving mechanical parts, unprotected heights, commercial driving and vibration. Tr. 21. After finding that plaintiff could not perform her past relevant work as a property manager or receptionist, relying on vocational expert testimony, the ALJ found that plaintiff could perform the requirements of representative occupations such as (1) Call Out Operator (DOT 237.367-014), which was a sedentary, unskilled job with an SVP of 2, and of which there are 16,000 jobs in the national economy; and (2) Surveillance System Monitor (DOT 379.367-010), which was a sedentary, unskilled job with an SVP of 2, and of which there are 19,000 jobs in the national economy. Tr. 26, 65.

The court has, *sua sponte*, identified three concerns with the ALJ's decision: the treatment of obesity; the evaluation of plaintiff's bilateral carpal tunnel syndrome and osteoarthritis; and the limitation to occasional handling, fingering, and feeling.

**II.     The Effect of the Seventh Circuit Decisions from 2014**

As already alluded to, a screening of the instant case in light of the six opinions issued in the summer of 2014 and referenced by this court in connection with the *Triplett* remand affords no guarantee that future Seventh Circuit decisions will not eventually cause the Commissioner to treat this matter as she did *Triplett*—or that some other factor may not trigger a remand in the future.

The Commissioner cannot state that the current matter does not "run afoul of" any of the decisions identified in this court's order, as further explained below. Indeed, several of the Seventh Circuit's decisions, apart from their holdings, have potentially unpredictable implications. Moreover, some of the decisions are lengthy and touch on numerous issues; the Commissioner is not purporting to comprehensively describe everything the Seventh Circuit included in its opinions. Nonetheless, while the decisions below may affect this court's analysis of certain issues, the Commissioner submits that the ALJ's decision in this case should still be affirmed. She has considered each of the cited cases and does not believe that they warrant a change of her litigation position in this case at this time.

**A.     *Yurt v. Colvin*, 758 F.3d 850 (7th Cir. 2014)**

The *Yurt* case concerned a plaintiff who had a psychotic disorder causing hallucinations and rage outbursts. 758 F.3d at 852. The court held that the ALJ erred in adopting the state agency reviewing psychologist's opinion, which the court found to be substantively weak. *Id.* at 858-60. Specifically, the court emphasized that the moderate limitations the psychologist identified in one part of the MRFCA form made it unlikely that his ultimate conclusion elsewhere on the same form actually accounted for those limitations, and the court noted that other evidence not referenced on the form also contradicted the psychologist's ultimate opinion. *Id.* at 858-59. The court found the ALJ's hypothetical question to the vocational expert deficient because the ALJ adopted the

4

psychologist's opinion but did not include limitations the psychologist identified in section I of the MRFCA form (and as shown by other evidence), and therefore did not account for Yurt's true limitations in concentration, persistence, or pace. *Id.* at 857-58.

The instant case does not involve a mental impairment and therefore does not run afoul of *Yurt*.

### B. *Murphy v. Colvin*, 759 F.3d 811 (7th Cir. 2014)

In *Murphy*, the court expressed dissatisfaction with the ALJ's inquiry into the plaintiff's credibility relating to her stroke-related limitations. 759 F.3d at 816-17. The court found that the ALJ should have conducted a more detailed examination of the plaintiff's activities during her post-stroke international travels to determine if those vacations undermined her credibility. *Id.* at 817. The court also found that the ALJ did not make an adequate inquiry into the plaintiff's reasons for non-compliance with treatment. *Id.* at 816.

The decision in *Murphy* further criticized the ALJ for relying on the treating physician's treatment notes that plaintiff was improving or stable, stating that neither characterization necessarily showed that the plaintiff was capable of light work. *Id.* at 818-19.

The case now before the court contains an evaluation by the ALJ of plaintiff's subjective allegations.[2] The ALJ discussed the record evidence, including plaintiff's testimony, and concluded that her statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record.

---

[2] On March 28, 2016, Social Security Ruling 16-3p became effective to issue new guidance regarding how a disability claimant's statements about the intensity, persistence, and limiting effects of symptoms are to be evaluated under Titles II and XVI. 2016 WL 1237954. Under SSR 16-3p, an ALJ now assesses a claimant's subjective symptoms rather than assessing her "credibility."

Tr. 22. None of this runs afoul of *Murphy*, which stands for the fundamental principle that an ALJ's subjective symptom finding must be supported by substantial evidence.

### C. *Hanson v. Colvin*, 760 F.3d 759 (7th Cir. 2014)

The substantive issues in *Hanson* mostly revolve around the ALJ's evaluation of two opinions about the extent of the plaintiff's limitations due to his back impairment. However, the element of the *Hanson* decision that most concerned the Commissioner is the court's strong statement that the Commissioner's attorney violated *S.E.C. v. Chenery*, 332 U.S. 194 (1947), and was committing professional misconduct and risking sanctions by arguing as an alternative ground for affirmance that the ALJ found the plaintiff not credible. 760 F.3d at 762.

Counsel for the Commissioner did not agree that they violated *Chenery* in *Hanson*, nor did they feel they committed any such violation in *Triplett*. *Hanson*, however, plainly called upon counsel to evaluate her defense of other cases. Thus, the *Hanson* decision may affect any case. In the case currently before this court, counsel for the Commissioner will take care to rely on the ALJ's rationale in defending the decision.

### D. *Moon v. Colvin*, 763 F.3d 718 (7th Cir. 2014)

Following the events in *Triplett*, the *Moon* decision was changed in a way that reduces its relevance to the Commissioner's defensibility analysis.

At the time the Commissioner sought remand in *Triplett*, the Seventh Circuit had found in *Moon* that the Commissioner's attorney violated *Chenery* when defending the ALJ's analysis of the plaintiff's headaches by pointing to the identical opinions of two physicians, each of whom took the plaintiff's migraines into account. The Commissioner subsequently filed a petition for rehearing asking the court to remove its statement that the Commissioner's attorney violated

6

*Chenery*. That petition was granted on October 24, 2014, and the decision has been amended to rescind the accusation of a *Chenery* violation.

This case involves migraine headaches, which the ALJ found to be not severe (along with her alleged right knee problems), and explained that there were no significant objective medical findings in the record to support more than minimal limitations on plaintiff's ability to perform work activities arising from these impairments. Tr. 20. The ALJ also stated that although she found these impairments were non-severe, the limiting effects of all plaintiff's impairments, even those that are not severe, were considered in determining plaintiff's residual functional capacity. Tr. 20.

      E.     *Goins v. Colvin*, 764 F.3d 677 (7th Cir. 2014)

In *Goins*, the court found that the ALJ's "critical failure" was in not obtaining a medical opinion concerning a late-dated MRI. 764 F.3d at 680-82. Also, the court found that the ALJ did not adequately consider the plaintiff's obesity, in particular the combined effect of obesity and other impairments. *Id.* at 681. And the court was critical of the ALJ's credibility assessment, discounting the ALJ's findings that the plaintiff performed work after her alleged onset date and that her claims that she did not seek treatment due to a lack of insurance were not credible because she knew she could obtain emergency room care. *Id.* at 679-80. Finally, the court found it implausible that someone with the plaintiff's impairments could perform a range of medium work as the ALJ found. *Id.* at 683.

This case involves a subjective symptom assessment by the ALJ, as already addressed. It also implicates the ALJ's consideration of plaintiff's obesity. The ALJ reasonably considered plaintiff's obesity-related limitations at all relevant stages of the sequential evaluation process, with explicit citations to the record. She found that the combined effects of plaintiff's obesity,

along with her other impairments, supported the reduced sedentary residual functional capacity. Tr. 23.

      F.      *Browning v. Colvin*, 766 F.3d 702 (7th Cir. 2014)

The *Browning* case was about the severity of the plaintiff's mental impairment, and more specifically, about whether she was disabled pursuant to Listing 12.05C. 766 F.3d at 703-05.

The court's decision, though, touched upon a number of issues not raised by either party. Notably, the court felt that the ALJ did not adequately consider the plaintiff's obesity. *Id.* at 706-07. The court likewise was critical of the ALJ's step-five finding, indicating that the ALJ failed to consider plaintiff's inability (according to the court) to live and work outside her hometown, and did not have evidence on how many jobs within her immediate vicinity were "likely to be vacant;" and the court commented more generally on the lack of credible statistics regarding the number of jobs in specific occupations and the age of the *Dictionary of Occupational Titles*. *Id.* at 708-09. The *Browning* decision demonstrated that issues not raised by the plaintiff before the district court (or even on appeal) can nonetheless capture the attention of the Seventh Circuit. The *Browning* decision, therefore, "affects" this case, as it does all cases.

This case does involve the analysis of plaintiff's obesity, already discussed above. And the decision also relied on VE testimony. But the relevant language about the ALJ's step-five finding in *Browning* is *dicta*, and just as critically, the VE's testimony was sufficient to provide substantial evidence for the ALJ's decision.

## III. The Effect of Other Seventh Circuit Cited by the Court

As with the six *Triplett*-related cases, the two other cases cited by this Court in its Order do not compel the Commissioner to seek remand of this matter at this time.

A. *Varga v. Colvin*, 794 F.3d 809 (7th Cir. 2015), *Sarchet v. Chater*, 78 F.3d 305 (7th Cir. 1996)

This court references *Varga* and *Sarchet* to note that the ALJ needs to provide a "logical bridge" between the evidence and her conclusions[3], the points on either side of the bridge in this case being the VE's testimony and the ALJ's finding that plaintiff could perform the representative occupations of (1) Call Out Operator (DOT 237.367-014), which was a sedentary, unskilled job with an SVP of 2, and of which there are 16,000 jobs in the national economy; and (2) Surveillance System Monitor (DOT 379.367-010), which was a sedentary, unskilled job with an SVP of 2, and of which there are 19,000 jobs in the national economy. Tr. 26, 65. This court appeared to question how a person found unable to perform plaintiff's past job as a receptionist could nonetheless perform the two jobs identified by the VE. Notably, the DOT indicates that a receptionist, DOT 237-367-038, handles frequently (fingers occasionally and feeling not present), which is beyond the plaintiff's capacity, as she was limited to only occasional handling. But, according to the DOT, Call-Out Operator, 237.367-014, involves only occasional handling and fingering (feeling not present), so plaintiff can do this job, as the VE testified. And, according to the DOT, Surveillance System Monitor, 379.367-010, does not involve any handing, fingering, or feeling, so plaintiff can perform this job also.

This court also appears concerned about the VE's response to cross-examination. Plaintiff's attorney asked if the call out operator job required occasional fingering, and the VE

---

[3] The specifics of the facts underlying this principle in *Sarchet* and *Varga* are not relevant as applied to the ALJ decision here. Part of the problem in *Varga* was that the ALJ relied on a reviewer's opinion that lacked a narrative conclusion (and only communicated check-box findings). This is not the situation here. In *Sarchet*, the court found that the ALJ misunderstood the testimony of both the VE (about the substance of a physician's opinion) and a psychologist (about the specifics of the plaintiff's "symptom magnification"). This is also not the situation here. This case did not involve a mental impairment and the ALJ did not misunderstand the VE's testimony.

9

indicated that it called for occasional use of the upper extremities, according to the SCO. Tr. 66. The VE also said "And I think, it says frequent atop here. So, I didn't let -- there's more talking and hearing going on than note taking and dialing." Tr. 66. While it was not entirely clear to what the VE was referring when he stated "it says frequent atop here," he repeatedly confirmed that the call out operator job involved just occasional use of the upper extremities, Tr. 66, and the DOT definition confirms that the job of call out operator involves just occasional handling and fingering. Thus, ALJ provided a logical bridge between the VE's testimony regarding the kinds of jobs plaintiff could perform, and her finding that plaintiff was not disabled because she could perform a significant number of jobs in the national economy.

As stated above, the VE clearly testified, and the DOT job descriptions he provided indicate, the job of call out operator involves occasional use of the upper extremities.

## Conclusion

The Commissioner has considered its defense of this matter in light of *Triplett* and the Seventh Circuit decisions listed in this court's order of October 24, 2017, and requests that this court affirm the Commissioner's decision.

    Respectfully submitted,

    JOEL R. LEVIN
    Acting United States Attorney

    By: s/ Virginia O. Hancock
       VIRGINIA O. HANCOCK
       Assistant United States Attorney
       219 South Dearborn Street
       Chicago, Illinois 60604
       (312) 353-1998
       virginia.hancock@usdoj.gov

Of Counsel:

KATHRYN CALDWELL
Acting Regional Chief Counsel
Social Security Administration

ALLEN DUARTE
Branch Chief
Social Security Administration
Office of the Regional Chief Counsel
200 W. Adams Street, Suite 3000
Chicago, Illinois 60606
(877) 800-7578 ext. 19119
allen.duarte@ssa.gov