IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MARIA ARANDA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 17 C 5449 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Over three and a half years ago, Maria Aranda filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"). 42 U.S.C. §§416(i), 423, 1382c(3)(A). (Administrative Record (R.) 173-76, 177-82). She claimed that she became disabled as of February 28, 2014, and was unable to work due to osteoarthritis in both hands, torn ligaments in her legs, and obesity. (R. 213, 216). Over the course of the ensuing three years, Ms. Aranda's application was denied at every level of administrative review: initial, reconsideration, administrative law judge (ALJ), and appeals council. It is the ALJ's decision that is before the court for review. See 20 C.F.R. §§404.955; 404.981. Ms. Aranda filed suit under 42 U.S.C. § 405(g), and the parties have consented to the jurisdiction of a Magistrate Judge pursuant to 28 U.S.C. § 636(c). Ms. Aranda asks the court to reverse and remand the Commissioner's decision, while the Commissioner seeks an order affirming the decision.

**I.**

Ms. Aranda is 50 years old, and was 48 at the time of the ALJ's decision. She has a solid work history, most recently as a property manager for eight years until February of 2014. (R. 218).

That job involved taking calls from residents and scheduling appointments, and doing building walk-throughs. (R. 38, 249). She also worked as a receptionist in a doctor's office, where she spent most of the day sitting, making phone calls, setting up appointments, and doing intake. (R. 251). Ms. Aranda has had at least a couple of surgeries – bilaterally – for carpal tunnel syndrome, which seemed to be successful, but after about a month, the pain in her hand and wrist became too much, and she had to stop working. (R. 40). She takes Naproxen for the pain, has occasional cortisone shots, and wears wrist braces. (R. 41). She can't brush her teeth or her hair on her own. (R. 46). Her children cook her meals; she starting dropping dishes and pans about a year before her administrative hearing. (R. 47). She is able to do some housework – laundry, sweeping – but her children helped with that as well. (R. 48). She also has trouble getting around because of the pain in her knees and being overweight. (R. 50-52). And, she gets migraines a couple times a month. (R. 53-54).

After an administrative hearing – at which Ms. Aranda, represented by counsel, and a medical expert and a vocational expert all testified – the ALJ determined she was not disabled. The ALJ found that Ms. Aranda had severe bilateral carpal tunnel syndrome, severe osteoarthritis, and severe obesity. (R. 19). The ALJ found that her knee problems – x-rays showed increasing small right joint effusion with increasing mild degenerative changes and mild left degenerative changes (R. 715) – and her migraines were not severe. (R. 20). None of Ms. Aranda's impairments, singly or in combination, amounted to a condition that met or equaled an impairment assumed to be disabling in the Commissioner's listings. (R. 20-21).

The ALJ then determined that Ms. Aranda could perform sedentary work, "except" that she could occasionally lift ten pounds and frequently lift less that ten pounds; stand/walk for six hours;

2

sit for six hours; occasionally push or pull with her upper extremities; occasionally climb ramps and stairs but never climb ladders, ropes, or scaffolds; frequently balance, stoop, kneel, crouch, and crawl; and occasionally handle, finger, and feel bilaterally. (R. 21). In making this residual functional capacity finding, the ALJ essentially adopted the opinion of the medical expert that testified at the hearing. (R. 24). In order to dismiss Ms. Aranda's complaints that she was unable to return to work due to the pain in her hands, the ALJ pointed to some reports from shortly after Ms. Aranda's carpal tunnel surgery in April-May 2014 and April 2016 that the ALJ said showed Ms. Aranda "could often make a full fist, exhibited full range of motion and her sensation was present to light touch in the radial, ulnar, and medial nerve distribution." (R. 23). The ALJ also stated that Ms. Aranda's hearing testimony that her wrist pain increased around September 2015 was inconsistent with her report to a physician in March 2016 that her carpal tunnel symptoms had returned the previous month. (R. 23).

Relying on the testimony of the vocational expert from the administrative hearing, the ALJ determined that, while Ms. Aranda could no longer perform her past work as a property manager, she could nevertheless perform other work that exists in significant numbers in the national economy: call out operator (Dictionary of Occupational Titles (DOT) 237.367-014), and surveillance system monitor (DOT 379.367-010). (R. 26). As a result, the ALJ concluded that Ms. Aranda was not disabled and not entitled to benefits. (R. 26).

## II.

If the ALJ's decision is supported by substantial evidence, the court on judicial review must uphold that decision even if the court might have decided the case differently in the first instance. See 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Beardsley v. Colvin*, 758 F.3d 834, 836 (7th Cir. 2014). To determine whether substantial evidence exists, the court reviews the record as a whole but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses. *Beardsley*, 758 F.3d at 837. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits," the court must defer to the Commissioner's resolution of that conflict. *Binion v. Chater,* 108 F.3d 780, 782 (7th Cir.1997); *Schloesser v. Berryhill*, 870 F.3d 712, 717 (7th Cir. 2017)

But, in the Seventh Circuit, the ALJ also has an obligation to build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015); *O'Connor–Spinner v. Astrue,* 627 F.3d 614, 618 (7th Cir.2010). The court has to be able to trace the path of the ALJ's reasoning from evidence to conclusion. *Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015); *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011). Even if the court agrees with the ultimate result, the case must be remanded if the ALJ fails in his or her obligation to build that logical bridge. *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)(". . . we cannot uphold a decision by an administrative agency, any more than we can uphold a decision by a district court, if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result."). *See also Minger v. Berryhill*, \_F.Supp.3d\_, 2018 WL 1887300 at n.1 (N.D.Ill. 2018).

4

**III.**

We begin with the ALJ's assessment of Ms. Aranda's complaints. As already noted, she found that Ms. Aranda's allegations about the pain and limitations due to her carpal tunnel syndrome were "not consistent with the medical evidence and other evidence in the record." (R. 22). The ALJ focused on a few reports from April-May of 2014 – not long after Ms. Aranda's carpal tunnel surgeries and trigger release and ganglion cyst surgeries – and from April 2016. (R. 22). She said those reports undermined Ms. Aranda's claims of pain in her hands because they show Ms. Aranda could make a fist and had full range of motion and sensation to light touch. (R. 23). But when one goes beyond the ALJ's summary of those reports and reviews the reports themselves, there is really nothing in them to undermine Ms. Aranda's complaints. The ALJ appears to have cherry-picked a couple of positive signs here or there or even to have misread these reports altogether. *See Gerstner v. Berryhill*, 879 F.3d 257, 262 (7th Cir. 2018)(ALJ improperly fixated on select portions of treatment notes); *Meuser v. Colvin*, 838 F.3d 905, 912 (7th Cir. 2016)("An ALJ cannot recite only the evidence that supports his conclusion while ignoring contrary evidence."); *Campbell v. Astrue*, 627 F.3d 299, 301 (7th Cir. 2010)("An ALJ may not selectively discuss portions of a physician's report that support a finding of non-disability while ignoring other portions that suggest a disability.").

The first of the reports the ALJ cited, the report from April 14, 2014, states that pain was returning in both wrists and that there was pain when doing normal activities. (R. 332). There was pain in both hands with range of motion. (R. 333). Fingers were stiff and there was general tenderness in the wrists. (R. 333). The report from May 2014 noted swelling in both wrists, tenderness, and painful and limited range of motion bilaterally. (R. 621). The pain continued to

worsen through August of 2014 and by November 2014, she could no not make a fist with either hand. (R. 354, 364). The March 2016 report cited by the ALJ noted soreness, tenderness, and triggering on the right hand and wrist and stiffness, soreness, and tenderness in the left hand and wrist. It was severe enough that Ms. Aranda's physician gave her bilateral lidocaine injections. (R. 655). There was still pain noted in the April 2016 report, and it was worse when Ms. Aranda used her hands. (R. 682).

None of this calls into question Ms. Aranda's complaints about the pain in her hands and wrists, and the ALJ doesn't explain how it could. If anything, the fact that Ms Aranda has tried multiple surgeries, drugs, physical therapy and injections to relieve her pain bolsters her credibility. *Stark v. Colvin*, 813 F.3d 684, 687 (7th Cir. 2016); *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016); *Carradine v. Barnhart,* 360 F.3d 751, 755 (7th Cir.2004). Moreover, the ALJ erred by focusing in this case on the medical evidence to discount Ms. Aranda's allegations. *Stark v. Colvin*, 813 F.3d 684, 688 (7th Cir. 2016); *Hall v. Colvin,* 778 F.3d 688, 691 (7th Cir.2015); *Pierce v. Colvin,* 739 F.3d 1046, 1049–50 (7th Cir.2014).

The ALJ also took Ms. Aranda to task for what she felt was an inconsistency between her testimony at the hearing and a statement she made to one of her physicians. According to the ALJ:

> [Ms. Aranda] testified that her hand and wrist pain increased and she stopped cooking and cleaning in September 2015. (Hearing Testimony). However, during an annual physical in March 2016, [Ms. Aranda] reported her carpal tunnel symptoms had returned on her right hand a month ago (5F/2).

(R. 23). But the report the ALJ cites – 5F/2 – is actually from August of 2015. (R. 375-79). At that time, the physician reported that Ms. Aranda said:

> [n]ow feels like carpal tunnel symptoms have returned in right hand. Most exacerbated by cooking, brushing. Gets pins and needles sensation in hand.

6

(R. 375). So the ALJ got the date of the exam wrong – and the Commissioner compounds the error in her brief [Dkt. #21, at 5][1] – and therefore misses the point that what Ms. Aranda told her doctor in August 2015 corroborates nearly exactly with what she told the ALJ at the hearing in April of 2016. (R. 47). She may have been a month off, August instead of September, but she actually said it was around September. Again, there's nothing here to undermine Ms. Aranda's allegations. There's no logical bridge between the evidence the ALJ points to and the conclusion she draws from it.

Beyond that, although the ALJ noted Ms. Aranda's extremely limited daily activities – for example, her son had to help her brush her teeth and her older daughter did nearly all the work around the house – she seemed to ignore these limitations completely. Did she think Ms. Aranda was lying? If she did, she cited nothing to support such an assessment. An ALJ cannot ignore that a plaintiff performs daily activities with significant limitations, with help, or with breaks to rest. *See Stark v. Colvin*, 813 F.3d 684, 688 (7th Cir. 2016); *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013).

Accordingly, this case has to be remanded, but it is worthwhile to note a couple of additional concerns. One is the ALJ's treatment of Ms. Aranda's obesity. The ALJ found it was severe (R. 19), meaning it significantly limited Ms. Aranda's ability to perform basic work activities, including

---

[1] The ALJ and the Commissioner – not to mention Ms. Aranda's counsel [Dkt. #20, at 16-17; Dkt. #21, at 5-6] – have confused the date of the office visit – August 31 2015 (R. 375, 376) with the date the records were printed, noted on the cover sheet as March 2016 (R. 374) and in the upper right-hand corner of each page of the records which cover August 3, 2015, through November 10, 2015. (Court Transcript Index, Ex. 5F). Page 1 of the notes for the visit the parties are arguing about indicates that the visit took place on August 3, 2015 (R. 375), and the physician electronically signed the report the next day, August 4, 2015. (R. 379). It's an understandable mistake to have made, especially given the haphazard manner in which these often massive transcripts are compiled, but it becomes a significant flaw when it serves as one of two bases the ALJ gave for discrediting the claimant's testimony.

"walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling." *Thomas v. Colvin*, 826 F.3d 953, 960 (7th Cir. 2016); *Stage v. Colvin*, 812 F.3d 1121, 1124 (7th Cir. 2016). According to the ALJ, "the combined effects of the claimant's obesity, along with her other impairments, support the reduced sedentary residual functional capacity as described in this finding." (R. 23).[2] But the ALJ found that Ms. Aranda, despite her severe obesity and non-severe, medically documented (R. 715) arthritis in both knees, *see Yurt v. Colvin*, 758 F.3d 850, 860 (7th Cir. 2014)(ALJ must consider the combined effects of both severe and non-severe impairments), could stand or walk for six hours out of every workday, climb ramps and stairs up to one third of every workday, and kneel, crouch, or crawl up to two thirds of every workday. There's not much of a logical bridge there. Severe obesity would, of course, adversely impact the arthritis in Ms. Aranda's knees and make it challenging if not impossible to spend so much time walking, climbing, kneeling, and crawling. *See, e.g., Allensworth v. Colvin*, 814 F.3d 831, 833 (7th Cir. 2016)(discussing obesity's effect on back and knee impairments); *Browning v. Colvin*, 766 F.3d 702, 707 (7th Cir. 2014)(discussing obesity's effect on the ability to do even sedentary work and exacerbation of leg pain); *Goins v. Colvin*, 764 F.3d 677, 682 (7th Cir. 2014)("Does the SSA think . . . that at her present weight and with her present symptoms she can, even occasionally, crawl, stoop, and crouch?").

Another issue is what the ALJ thought Ms. Aranda could do with her hands despite her severe bilateral carpal tunnel syndrome and the vocational expert's testimony. The ALJ found that Ms. Aranda could use her hands to handle, finger, and feel for one third of every workday but, as has been shown, this was because the ALJ didn't believe Ms. Aranda's testimony and ignored medical

---

[2] The Commissioner has maintained that this conclusory statement is enough [Dkt. #15, at 7-8], even when the ALJ's RFC finding so clearly calls into question whether she considered Ms. Aranda's obesity in combination with other impairments at all.

8

reports detailing her limited range of motion, pain, and swelling. So, the RFC is faulty in the first place. But the vocational expert's testimony makes matters worse. Assuming Ms. Aranda actually could use her hands as much as the ALJ thought, the vocational expert testified that Ms. Aranda could no longer perform her past work as a property manager or as a receptionist. As a receptionist, Ms. Aranda sat for most of the day, worked over the phone with patients making appointments, and carried some small files. As the ALJ added restrictions to the hypothetical she gave to the vocational expert, the vocational expert testified that, with the addition of a limitation to only occasional use of the hands to handle, finger, and feel, the job of receptionist and property manager would be ruled out. (R. 65). But the job of call out operator, which the vocational expert described as "sitting on the phone, just calling" would not. (R. 66). That's almost exactly how Ms. Aranda described her receptionist job: "Make phone calls. Set up appointments, intake." (R. 251). Yet, according to the vocational expert she could no longer be a receptionist. There's some logic missing there as well.

When questioned by Ms. Aranda's attorney, the vocational expert became a bit confused and indicated that the job of call out operator involved frequent use of the hands, meaning Ms. Aranda couldn't perform that work either. (R. 66). He did then say there was "more talking and hearing going on" than note taking. (R. 66). But, of course, that doesn't rule out more than occasional note-taking or use of the hands for fingering, handling, and feeling, which would rule the job of call out operator for Ms. Aranda. So there's nothing added to any potential logical bridge there.[3]

---

[3] It is understood that the Selected Characteristics of Occupational Titles indicates that the job of Receptionist involves frequent handling, occasional fingering, and no feeling and the job of Call Out Operator involves occasional handling, occasional fingering, and no feeling. (Available online at https://www.nosscr.org/sco/sco-ocr.pdf). The Commissioner referred to this in her brief, but cited it as coming from the DOT and did not refer the court to the SCO. (Dkt. #21, at 7). Of course, we are concerned here with the evidence the ALJ had to work with, not what the court was able to learn through independent
(continued...)

It's true, as the Commissioner has pointed out, that there's another potential job in the hopper: surveillance system monitor. (R. 26). But the foregoing does serve to call into question the soundness of the vocational expert's testimony. Even a brief cross-examination revealed the vocational expert's testimony to be "shaky." *Cf. Schultz v. Akzo Nobel Paints, LLC*, 721 F.3d 426, 431 (7th Cir. 2013)("[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."). It's a problem the Seventh Circuit has adverted to on more than one occasion, *see, e.g., Forsythe v. Colvin*, 813 F.3d 677, 680–81 (7th Cir. 2016)(collecting cases); *Alaura v. Colvin*, 797 F.3d 503, 508 (7th Cir. 2015), but continues to arise to one degree or another.

## CONCLUSION

For the foregoing reasons, the plaintiff's motion for remand [Dkt. #20] is GRANTED, and the defendant's motion for an affirmance of the ALJ's decision is DENIED.[4]

**ENTERED:** _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 5/30/18

---

[3](...continued)
research later on. *Cf Meuser v. Colvin*, 838 F.3d 905, 911 (7th Cir. 2016). Moreover, the description of what the call out operator job involved comes from 1977, over 40 years ago. https://occupationalinfo.org/23/237367014.html. As the Seventh Circuit has remarked in a similar context, "[n]o doubt . . . the job[] ha[s] changed and [may]have disappeared." *Browning v. Colvin*, 766 F.3d 702, 709 (7th Cir. 2014).

[4] Plaintiff asks that the ALJ's decision be reversed and an award of benefits ordered. "It remains true that an award of benefits is appropriate only if all factual issues have been resolved and the record supports a finding of disability." *Allord v. Astrue*, 631 F.3d 411, 417 (7th Cir. 2011). As the remand here comes under the Seventh Circuit's "logical bridge" requirement, an award of benefits is not appropriate without further administrative proceedings.